1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

11   ESTATE OF BALJIT SINGH, et al.,  )   Case No.S:09-CV-01439 JAM-JFM
                                       )
12                      Plaintiffs,    )   **AMENDED PRETRIAL**
                                       )   **CONFERENCE ORDER**
13        v.                           )
                                       )
14   COUNTY OF SACRAMENTO, et al.,     )
                                       )
15                      Defendants.    )
     _____)
16

17        Pursuant to court order, a Pretrial Conference was held on

18   February 22, 2013 before Judge John Mendez.  Stewart L. Katz and

19   Joseph C. George, Sr. appeared as counsel for plaintiffs; Robert F.

20   Tyler and Steven J. Williamson appeared as counsel for defendants.

21   After hearing, the court makes the following findings and orders:

                         I. <u>JURISDICTION/VENUE</u>

23        Jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1343,

24   and has previously been found to be proper by order of this court,

25   as has venue.  Those orders are confirmed.

                          II. <u>JURY/NON-JURY</u>

27        Both parties have made a timely demand for a jury trial.

28   ///

III. <u>STATEMENT TO BE READ TO JURY</u>

Seven (7) days prior to trial the parties shall E-file a joint statement of the case that may be read to the jury at the beginning of jury selection.

IV. <u>UNDISPUTED FACTS</u>

Plaintiffs' and Defendants' Undisputed Facts:

1.   Jail Psychiatric Services (JPS) provides mental health services to the inmates at the Sacramento County Main Jail.

2.   Jail Psychiatric Services (JPS) is run by the University of California Davis Medical Center and provided those services pursuant to a contract with Sacramento County.

3.   At the relevant times Gregory Sokolov, MD was the Medical Director of JPS.

4.   At the relevant times Paul Hendricks, RN was the Clinical Director of JPS.

5.   At the relevant times Robert E. Hales, MD was the chairman of the UC Davis Department of Psychology, which operates JPS.

6.   L. Michael Tompkins, Ed.D was a psychologist at the Sacramento County Main Jail working for JPS at the relevant times.

7.   Amarjit Singh is the widow of Baljit Singh.

8.   Baljit Singh died by way of suicide on March 14, 2008. At the time of his death, Baljit Singh was a pretrial detainee at the Sacramento County Main Jail.

9.   Plaintiffs Prabjit Singh Dhanda, Jasjit Kaur Dhanda, Sukhjit Kaur Dhanda and Davanjit Singh Dhanda are the surviving children of Baljit Singh.

10.   Donna Champeau, RN at the relevant times was a Registered Nurse working for JPS.  She died prior to the filing of this suit.

11.   The Sacramento County Main Jail is operated by the Sacramento County Sheriff's Department.  The custodial staff is employed by the Sacramento County Sheriff's Department, as were the non-mental health healthcare professionals.

12.   Decedent Baljit Singh was arrested on March 5, 2008 and booked into the Sacramento County Main Jail.

13.   Decedent, Baljit Singh, was then transferred to and then hospitalized at U.C. Davis Medical Center between March 5, 2008, and March 10, 2008 for pancreatitis and alcohol withdrawal.

14.   During Singh's March 2008 hospitalization at UCDMC between the 5th and the 10th, he received psychotropic medications, including Risperdal and Seroquel.

15.   Baljit Singh was seen at the U.C. Davis Medical Center Emergency Room on March 13, 2008, through March 14, 2008.

16.   Paul Hendricks, RN was the direct supervisor of Donna Champeau, RN and L. Michael Tompkins, Ed.D at the relevant times.

### V. DISPUTED FACTUAL ISSUES

Plaintiffs' and Defendants' Disputed Facts:

1.   Whether or not Baljit Singh attempted suicide on March 13, 2008.

2.   Whether or not Donna Champeau as of March 14, 2008, was aware of any prior suicide attempts by Baljit Singh.

3.   Whether or not Donna Champeau was aware as of March 14, 2008, that Baljit Singh had any psychiatric hospitalizations.

4.   Whether or not Baljit Singh had requested to see a JPS psychiatrist in March of 2008.

1    5.    Whether or not such a visit was scheduled for him.

2    6.    Whether or not on March 14, 2008, Baljit Singh should

3    have been on suicide precautions.

4    7.    Whether or not Baljit Singh had at least three suicide

5    attempts prior to March 14, 2008.

6    8.    Whether or not any JPS clinician knew that or should have

7    known Singh had been hospitalized at UC Davis Medical Center

8    between March 5, 2008 through March 10, 2008.

9    9.    Whether such knowledge would have made any difference in

10   their actions.

11   10.    Whether any de facto policy exists within JPS to not

12   obtain readily available outside medical records on inmates they

13   are seeing.

14   11.    Whether or not Champeau's suicide evaluation on March 14,

15   2008, was adequate or constitutionally deficient.

16   12.    Whether or not Tompkins did any form of suicide

17   assessment of Baljit Singh on March 14, 2008.

18   13.    How much time Tompkins spent interacting with Baljit

19   Singh on March 14, 2008.

20   14.    Whether or not Dr. Sokolov and/or RN Hendricks removed

21   documents from Singh's JPS file following his death in anticipation

22   of litigation.

23   15.    Whether or not Hendricks, Sokolov and/or Hales ratified

24   Champeau's interactions with Singh.

25   16.    Whether or not Hendricks, Sokolov and/or Hales ratified

26   Tompkins' interactions with Singh.

27   17.    Whether or not Hendricks, Sokolov and/or Hales adequately

28   reviewed the JPS interactions with Singh in March of 2008.

1      18.   Whether or not Tompkins was deliberately indifferent in
2    his interaction with Singh.

3      19.   Whether or not Sokolov's actions regarding Singh's death
4    were deliberately indifferent.

5      20.   Whether or not Hendricks' actions regarding Singh's death
6    were deliberately indifferent.

7      21.   Whether or not Hales' actions regarding Singh's death
8    were deliberately indifferent.

9      22.   The contents of the telephone conversation that occurred
10   between decedent and plaintiff Amarjit Singh shortly after he was
11   last seen by JPS clinician, Dr. Tompkins.

12     23.   Mr. Singh's mental status, and specifically the level of
13   his suicidal intent from when he was first seen by a JPS clinician
14   on March 13, 2008 and his death.

15     24.   Nature and extent of the relationship between the
16   plaintiffs, and each of them, and the decedent

17     25.   Whether the decedent held any suicidal ideation or intent
18   at the time Ms. Champeau saw him.

19     26.   Whether the decedent held any suicidal ideation or intent
20   at the time Dr. Tompkins saw him.

21     27.   Whether decedent was properly evaluated by Ms. Champeau
22   for suicidal ideation.

23     28.   Whether decedent was properly cleared by Ms. Champeau to
24   return to the jail's general population.

25     29.   Whether Ms. Champeau was "deliberately indifferent" to
26   decedent's needs in clearing him to return to general population in
27   the early morning of March 14, 2008.

28     30.   Whether defendants Sokolov, Hales, and/or Hendricks were

5

1  "deliberately indifferent" in determining to not discipline Ms.

2  Champeau due to her actions with regard to the decedent.

3      31.   Whether defendants Sokolov, Hales, and/or Hendricks were

4  "deliberately indifferent" in determining not to discipline

5  defendant Dr. Tompkins due to his actions with regard to the

6  decedent.

7      32.   Whether defendants Hales and/or Hendricks believed in

8  good faith, after their review of the chart that there was no

9  reason to discipline or counsel either Ms. Champeau or defendant

10 Tompkins.

11     33.   Whether defendants Sokolov, Hendricks and/or Hales

12 believed in good faith that their supervision of defendant Tompkins

13 and Ms. Champeau was not "deliberately indifferent" and met all

14 applicable constitutional standards.

15     34.   What information is contained in a CATS printout.

16                 VI.  DISPUTED EVIDENTIARY ISSUES

17     Plaintiffs' and Defendants' Disputed Disputed Evidentiary

18 Issues:

19     It is anticipated that there will be multiple issues regarding

20 the relevance of various specific items of proof related to various

21 of the disputed facts stated above, which will be the subject of

22 various in limine and trial evidentiary objections.

23     1.   Plaintiffs will move to exclude or circumscribe the

24 testimony of Dr. David Arenson a retained expert whom the

25 defendants apparently intend to call regarding the life expectancy

26 of Baljit Singh prior to his death. Plaintiffs will challenge

27 whether Dr. Arenson has either the expertise or reviewed sufficient

28 data to give such an actuarial opinion.

2.    Plaintiffs will move to exclude Dr. Metzner or any other expert giving an opinion based upon the double hearsay accounts of the last telephone conversation between Baljit Singh and his wife Amarjit Singh.  The conversation was recorded and the testimony of both the surviving participant in that call and the hearsay declarant whom the defense investigator claims to have interviewed testified and signed a declaration seemingly inconsistent with the investigator's account upon which Dr.  Metzner's opinion rests.

3.    Plaintiffs will move to exclude any explanation as to *why,* Lori Severance believes she told defendant L. Michael Tompkins, prior to his seeing Singh, that she thought that Tompkins should have Singh admitted to the in-patient psychiatric unit.

4.    Defendants will move to exclude the evidence concerning the circumstances of JPS employee Donna Champeau R.N's termination from JPS employ in December, 2008.

5.    Defendants will move to exclude the evidence concerning the JPS clinician Donna Champeau, R.N.'s prior and subsequent problems with alcohol, including the suspension of her nursing license by the California Board of Registered Nursing between 1999 and 2001.

6.    Defendants will move to exclude the evidence of, questions, reference to, or argument about statements made by Lori Severance, LCSW to defendant Tompkins, as he left to interview Singh, that Singh should be placed on "2P".  (See also, 5, above.)

7.    Defendants will move to exclude any evidence of, questions, reference to, and/or argument or inference that Mr. Singh had made and secreted a ligature in his cell sometime before his suicide.

8.    Defendants will move to exclude any evidence, inference, question, and/or argument concerning a phone conversation between Lori Severance and defendant Sokolov in which she requested Mr. Singh be seen in clinic on an "expedited" basis to assess his need for psychotropic medications.

9.    Defendants will move to exclude any evidence or argument concerning the phone conversation between Lori Severance and defendant Hendricks in which she requested Mr. Singh be seen in clinic on an "expedited" basis to assess his need for psychotropic medications.

10.   Defendants will move to exclude any evidence regarding argument and/or inference that one or more of the defendants destroyed a progress note made by Lori Severance concerning her purported telephone conversations with defendant Sokolov and Hendricks on 3/13/08 that might have been in Mr. Singh's JPS at the time of his death.

11.   Defendants will move to exclude any evidence regarding argument and or inference that one or more of the defendants destroyed a recent CATS printout that might have been in Mr. Singh's JPS files at the time of his death.

12.   Defendants will move to exclude any testimony, questioning, or assertions of policies allegedly extant in one or more California county jail system concerning or requiring that an inmate engaging in any form of suicidal behavior be placed on 24 hour (or more) suicide precautions.

VII. RELIEF SOUGHT

Plaintiffs seek to recover damages resulting from the death by suicide. They also seek punitive damages against the individual

1  defendants as well as attorneys' fees arising from this litigation.

2  VIII.  POINTS OF LAW

3      Trial briefs shall be E-filed with the court no later than

4  seven (7) days prior to the date of trial, i.e., April 1, 2013. Any

5  points of law not previously argued to the Court should be briefed

6  in the trial briefs.

7  IX.  ABANDONED ISSUES

8      Plaintiffs are abandoning (as an issue in the federal trial

9  only) the State Law claims for wrongful death pursuant to

10  California Civil Code Section 377.60 based upon Negligent

11  Supervision and Retention (which this Court found to be a viable

12  action as to defendants Paul Hendricks and Robert Hales) and the

13  claim based on the Failure to Summon Medical Aid under California

14  Government Code Section 845.6 (against L. Michael Tompkins).

15      Plaintiffs are abandoning these issues based upon tactical

16  considerations as opposed to questioning the merits or their

17  likelihood of prevailing on these claims.

18      All defendants hereby waive the following affirmative

19  defenses: Third Affirmative Defense (assumption of the risk);

20  Eighth Affirmative Defense (negligence of third parties); Ninth

21  Affirmative Defense (failure to join indispensable parties under

22  California's wrongful death statute); and the Tenth Affirmative

23  Defense (fatal uncertainty of plaintiffs' claims); Eleventh and

24  Twelfth Affirmative Defenses (MICRA defenses applicable to medical

25  negligence claims under California law, i.e., California Civil Code

26  section 3333.2 and California Code of Civil Procedure section

27  667.7).  All defendants also partially waive their Sixth

28  Affirmative Defense (comparative fault) but only insofar as same

pertains to the actions of any of the minor plaintiffs,
specifically retaining that defense as to plaintiff Amarjit Singh
and the decedent.   Defendant Tompkins hereby abandons all portions
of his Thirteenth Affirmative Defense save and except California
Government Code section 855.6 (failure to make adequate mental
examinations), and California Government Code section 855.8
(diagnosing or failing to diagnose mental illness or addiction).
Defendants Hales, Sokolov, and Hendricks hereby waive their
Thirteenth Affirmative Defense (state law immunities), save and
except their immunity from plaintiffs' state law claims under
California Government Code section 820.2 (discretionary acts); and,
California Government Code section 820.8 (no liability for acts or
omissions of others).

## X.   WITNESSES

Plaintiffs' witness list is attached to this Pretrial
Conference Order as Exhibit A.

Defendants' witness list is attached to this Pretrial
Conference Order as Exhibit B.

Each party may call a witness designated by the other.

A.   No other witnesses will be permitted to testify unless:

(1)   The party offering the witness demonstrates that the
witness is for the purpose of rebutting evidence which could not be
reasonably anticipated at the Pretrial Conference, or

(2)   The witness was discovered after the Pretrial
Conference and the proffering party makes the showing required in
"B" below.

B.   Upon the post-Pretrial discovery of witnesses, the
attorney shall promptly inform the court and opposing parties of

the existence of the unlisted witnesses so that the court may

consider at trial whether the witnesses shall be permitted to

testify.   The evidence will not be permitted unless:

(1)   The witnesses could not reasonably have been

discovered prior to Pretrial;

(2)   The court and opposing counsel were promptly

notified upon discovery of the witnesses;

(3)   If time permitted, counsel proffered the witnesses

for deposition;

(4)   If time did not permit, a reasonable summary of the

witnesses' testimony was provided opposing counsel.

XI.  <u>EXHIBITS, SCHEDULES AND SUMMARIES</u>

Plaintiffs' exhibit list is attached to this Pretrial

Conference Order as Exhibit C.

Defendants' exhibit list is attached to this Pretrial

Conference Order as Exhibit D.

Each party may use an exhibit designated by the other.

A.   No other exhibits will be permitted to be introduced

unless:

(1)   The party proffering the exhibit demonstrates that

the exhibit is for the purpose of rebutting evidence which could

not be reasonably anticipated at the Pretrial Conference, or

(2)   The exhibit was discovered after the Pretrial

Conference and the proffering party makes the showing required in

paragraph "B," below.

B.   Upon the post-Pretrial discovery of exhibits, the

attorneys shall promptly inform the court and opposing counsel of

the existence of such exhibits so that the court may consider at

1  trial their admissibility.  The exhibits will not be received
2  unless the proffering party demonstrates:

3          (1)   The exhibits could not reasonably have been
4  discovered prior to Pretrial;

5          (2)   The court and counsel were promptly informed of
6  their existence;

7          (3)   Counsel forwarded a copy of the exhibit(s) (if
8  physically possible) to opposing counsel.  If the exhibit(s) may
9  not be copied, the proffering counsel must show that he has made
10  the exhibit(s) reasonably available for inspection by opposing
11  counsel.

12      As to each exhibit, each party is ordered to exchange copies
13  of the exhibit not later than fourteen (14) days before trial.
14  Each party is then granted five (5) days to file and serve
15  objections to any of the exhibits.  In making the objection, the
16  party is to set forth the grounds for the objection.  The parties
17  shall pre-mark their respective exhibits in accord with the Court's
18  Pretrial Order.  Exhibit stickers may be obtained through the
19  Clerk's Office.  An original and one (1) copy of the exhibits shall
20  be presented to Harry Vine, Deputy Courtroom Clerk, at 8:30 a.m. on
21  the date set for trial or at such earlier time as may be agreed
22  upon.  Mr. Vine can be contacted at (916) 930-4091 or via e-mail
23  at: hvine@caed.uscourts.gov.  As to each exhibit which is not
24  objected to, it shall be marked and may be received into evidence
25  on motion and will require no further foundation.  Each exhibit
26  which is objected to will be marked for identification only.
27  ///
28  ///

1                    XII. DISCOVERY DOCUMENTS

2        Plaintiffs' Discovery Documents' List:

3        1.    Deposition of Jeffrey Metzner, MD dated May 31, 2012,

4    (DT 60:1-7; 52:3-14);

5        2.    Depositions of Gregory Sokolov dated November 15, 2011,

6    and December 8, 2011, (DT 40:12-21; 158:17-159:1; 60:24-61:22;

7    46:23-49:8; 146:4-9; 270:20-272:23; 67:5-15; 223:5-225:25; 228:3-

8    21; 29:24-31:7; 220:4-221:2; 140:1-141:21);

9        3.    Deposition of Robert Hales, MD dated January 24, 2012,

10   (DT 89:18-20; 136:5-137:17);

11       4.    Deposition of Michael Tompkins Ed.D dated January 23,

12   2012, (DT 12:5-19; 36:4-21; 42:9-43:5; 62:10-23; 12:10-14:11;

13   15:16-24; 16:3-17:20; 56:13-57:25; 43:6-15; 60:13-63:20; 12:10-

14   14:11; 15:16-24);

15       5.    Deposition of Paul Hendricks RN dated January 27, 2012,

16   (DT 51:11-52:4; 19:13-20:19; 32:20-33:21; 84:3-8; 82:15-19; 95:15-

17   22; 102:25-103:17; 19:13-20:19; 124:19-125:21; 32:25-33:3; 36:10-

18   37:6; 32:25-33:3; 36:10-37:6); and

19       6.    Deposition of Peter Dietrich, MD dated February 28, 2012,

20   (DT 81:2-86:20; 86:20-87:21; 4:14-15; 12:24-16:23; 19:1-17; 20:12-

21   17; 72:21-75:10; 75:15-77:5; 81:22-83:25; 85:3-85:20; 86:6-11;

22   93:11-94:2; 97:9-98:17; 101:18-102:11.

23       Defendants anticipate producing as affirmative evidence, each

24   of the eleven Requests for Admissions that all plaintiffs have

25   admitted, to wit:

26       1.    That they sought a TRO against decedent on 12/22/06

27   precluding contacts with any of the plaintiffs or with Autar Singh;

28       2.    That a true and accurate copy of that TRO is Exhibit Q);

1    3.    That on May 10, 2007, plaintiffs applied for a TRO

2  against decedent asking that he be precluded from contact with any

3  of them that he be removed from the family home;

4    4.    That a true and accurate copy of that TRO application is

5  Exhibit R;

6    5.    That in May of 2007 decedent attempted to strangle

7  plaintiff Prabjit Singh;

8    6.    That on September 10, 2007, plaintiffs applied for a TRO

9  against decedent asking that he be precluded from any future

10 contact or visitation either with any of them, or with his mother,

11 Autar, and that he be forced to move from the family home;

12   7.    That Exhibit S is a true and accurate copy of that

13 application;

14   8.    That on the basis of that last TRO application, a TRO to

15 that same effect was entered against decedent by the Sacramento

16 Superior Court;

17   9.    That a permanent restraining order to the same effect was

18 entered by the Sacramento County Superior Court on October 3, 2007,

19 which additionally gave sole custody of the plaintiff children in

20 favor of plaintiff Amarjit Singh;

21   10.   That Exhibit T is a true and accurate copy of that

22 permanent injunction; and

23   11.   That that permanent injunction remained in full force and

24 effect at the time of decedent's death.  Except as is stated above,

25 the parties do not anticipate the use of any discovery documents

26 except for the purposes of impeachment, the present need for which

27 is presently unknown.

28 ///

XIII. FURTHER DISCOVERY OR MOTIONS

Pursuant to the court's Status Conference Order, all discovery and law and motion was to have been conducted so as to be completed as of the date of the Pretrial Conference.  That order is confirmed.  The parties are free to do anything they desire pursuant to informal agreement.  ·However, any such agreement will not be enforceable in this court.

XIV. STIPULATIONS

The parties stipulate to the foundational prerequisites of the various medical records, educational records, and police records listed in their respective Exhibit Lists.

The parties will continue to discuss ways to simplify and streamline the action which may include a stipulation(s) for the jury.

XV. AMENDMENTS/DISMISSALS

As discussed above, Plaintiffs are abandoning several causes of action.

XVI. FURTHER TRIAL PREPARATION

A.  Counsel are directed to Local Rule 285 regarding the contents of trial briefs.  Such briefs should be E-filed seven (7) days prior to trial, i.e., April 1, 2013.

B.  Counsel are further directed to confer and to attempt to agree upon a joint set of jury instructions.  The joint set of instructions shall be lodged via ECF with the court clerk seven (7) calendar days prior to the date of the trial, i.e., April 1, 2013, and shall be identified as the "Jury Instructions Without Objection."  As to instructions as to which there is dispute the parties shall submit the instruction(s) via ECF as its package of

15

proposed jury instructions three days before trial, i.e., April 5,
2013.   This package of proposed instructions should not include the
"Jury Instructions Without Objection" and should be clearly
identified as "Disputed Objections" on the proposed instructions.

The parties shall e-mail a set of all proposed jury
instructions in word or wpd format to the Court's Judicial
Assistant, Jane Klingelhoets, at: jklingelhoets@caed.uscourts.gov.

C.   It is the duty of counsel to ensure that any deposition
which is to be used at trial has been lodged with the Clerk of the
Court pursuant to Local Rule 133(j).   The depositions shall be
lodged with the court clerk seven (7) calendar days prior to the
date of the trial.   Counsel are cautioned that a failure to
discharge this duty may result in the court precluding use of the
deposition or imposition of such other sanctions as the court deems
appropriate.

D.   The parties are ordered to E-file with the court and
exchange between themselves not later than one (1) week before the
trial a statement designating portions of depositions intended to
be offered or read into evidence (except for portions to be used
only for impeachment or rebuttal).

E.   The parties are ordered to E-file with the court and
exchange between themselves not later than one (1) week before
trial the portions of Answers to Interrogatories and Requests for
Admission which the respective parties intend to offer or read into
evidence at the trial (except portions to be used only for
impeachment or rebuttal).

F.   Each party may submit proposed voir dire questions the
party would like the court to put to prospective jurors during jury

selection.   Proposed voir dire should be submitted via ECF one (1) week prior to trial.

G.   Each party may submit a proposed verdict form that the party would like the Court to use in this case.   Proposed verdict forms should be submitted via ECF one (1) week prior to trial.

H.   In limine motions shall be E-filed separately at least fifteen (15) days prior to trial, i.e., March 24, 2013.   Opposition briefs shall be E-filed ten (10) days prior to trial, i.e., March 29, 2013.   No reply briefs may be filed.

XVII. SETTLEMENT NEGOTIATIONS

No further formal Settlement Conference will be set in this case.

XVIII. AGREED STATEMENTS

See paragraph III, *supra*.

XIX. SEPARATE TRIAL OF ISSUES

Plaintiffs are seeking to bifurcate the liability and damages portion of the trial.   Defendants request that the issue of the amount of any award for punitive damages, assuming that such are found to lie by the jury, should be bifurcated and tried separately from, and following the rendition of the judgment finding such damages awardable.   These requests for bifurcation are denied.

XX. IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

This is not appropriate for this case.

XXI. ATTORNEYS' FEES

The matter of the award of attorneys' fees to prevailing parties pursuant to statute will be handled by motion in accordance with Local Rule 293.

///

17

1

## XXII. <u>MISCELLANEOUS</u>

2    A Punjabi interpreter will be necessary for witness Autar Singh,

3  the decedent's mother.  A Punjabi interpreter may be required for

4  plaintiff Amarjit Singh, the decedent's widow.  The party requiring

5  an interpreter will be responsible for scheduling the interpreter's

6  appearance at trial.

7    Plaintiffs will present some of the deposition portions

8  identified on page 13 of the Court's order by use of the videotape

9  recording made of those depositions.  That video shall of course be

10  edited to only include the enumerated portions of the witnesses'

11  testimony.  Plaintiffs will submit the edited tape to the Court by

12  April 1, 2013 to accompany the submission to the Court of the

13  portions of deposition testimony to be read in to the record as

14  called for in the Pretrial Order.

15    Defendants have provided the Court with what they believe is

16  the "Non-Discovery Motion History" of this case:

17    The various County defendants made motions for summary

18  judgment, which were each granted by this court on November 7,

19  2012.  The present defendants (hereinafter "JPS defendants," i.e.,

20  defendants Hales, Hendricks, Sokolov and Tompkins) filed summary

21  judgment motions which were adjudicated by this court as follows:

22    1.    Plaintiffs' claims that the Jail Psychiatric Services

23  (JPS) suicide program is constitutionally deficient (Causes of

24  Action I, II, and IV as against Defendants Hales, Sokolov and

25  Hendricks) - MSJ/MSA granted;

26    2.    That defendants Hales, Hendricks and Sokolov were

27  deliberately indifferent (i.e., constitutionally deficient) in

28  their hiring, retention, training and supervision of JPS employees

1  Champeau and Tompkins – MSJ/MSA granted;

2      3.    That defendants Hales, Hendricks and Sokolov deliberately

3  indifferently ratified the alleged derelictions of JPS clinicians

4  Champeau and Tompkins (Causes of Action I and IV) – MSJ/MSA denied;

5      4.    Deliberate indifference in psychiatric care as to

6  defendant Tompkins for alleged failure to do a more thorough

7  suicide assessment and remove decedent from general population

8  (Cause of Action I) – MSJ/MSA denied;

9      5.    Defendant Sokolov's alleged deliberate indifference in

10  failing to grant a request for expedited handling of Mr. Singh's

11  situation (no allegations in complaint) – MSJ/MSA granted.

12      6.    Defendant Tompkins' alleged violation of California

13  Government Code section 845.6 (Cause of Action V.b) – MSJ/MSA

14  denied;

15      7.    State law claims regarding negligent supervision,

16  training, hiring and retention of JPS clinician Champeau and

17  Tompkins (Defendants Hales, Hendricks and Sokolov – Cause of Action

18  V.a) – MSJ/MSA granted as to defendant Sokolov, MSJ/MSA denied as

19  to defendant Hales and Hendricks;

20      8.    Defendant Sokolov's alleged professional negligence for

21  failing to grant request for expedited handling of Mr. Singh's

22  situation (no allegations in complaint) – no ruling, as issue not

23  properly before the Court;

24      9.    Professional negligence of defendant Tompkins in his

25  interactions with decedent Singh (no allegations in complaint) – no

26  ruling, as issue not properly before the Court;

27      10.    Plaintiffs' spoliation claim against defendants Hendricks

28  and Sokolov – MSJ/MSA granted; and

1    11.    Alleged unconstitutional "de facto" policy of failing to

2  have JPS clinicians obtain all "readily available medical

3  information" on inmates they were treating or assessing (defendants

4  Hales, Sokolov and Hendricks – Cause of Action III) - MSJ/MSA

5  denied.

6                  XXIII.  <u>ESTIMATE OF TRIAL TIME/TRIAL DATE</u>

7        The parties estimate nine (9) to ten (10) court days for

8  trial.[1]  Trial will commence on April 8, 2013, at 9:00 a.m.

9        Counsel are to call Harry Vine, Courtroom Deputy, at

10  (916) 930-4091, one week prior to trial to ascertain the status of

11  the trial date.

12        IT IS SO ORDERED.

13        DATED: March 1, 2013.

14

15  _____

16  JOHN A. MENDEZ
    United States District Court Judge

17

18  [1] The Court denies Defendants' request to modify this estimate.

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A: PLAINTIFFS' WITNESS LIST

1.    Amarjit Singh
      c/o Law Office of Stewart Katz
      555 University Avenue, Suite 270
      Sacramento, CA  95825

2.    Prabjit Singh Dhanda
      c/o Law Office of Stewart Katz
      555 University Avenue, Suite 270
      Sacramento, CA  95825

3.    Jasjit Kaur Dhanda
      c/o Law Office of Stewart Katz
      555 University Avenue, Suite 270
      Sacramento, CA  95825

4.    Sukhjit Kaur Dhanda
      c/o Law Office of Stewart Katz
      555 University Avenue, Suite 270
      Sacramento, CA  95825

5.    Davanjit Singh Dhanda
      c/o Law Office of Stewart Katz
      555 University Avenue, Suite 270
      Sacramento, CA  95825

6.    Autur Singh
      c/o Law Office of Stewart Katz
      555 University Avenue, Suite 270
      Sacramento, CA  95825

7.    Dr. Robert Hales
      c/o Wilke, Fleury, Hoffelt, Gould & Birney, LLP
      400 Capitol Mall, 22nd Floor
      Sacramento, CA  95814

8.    Paul Hendricks
      c/o Wilke, Fleury, Hoffelt, Gould & Birney, LLP
      400 Capitol Mall, 22nd Floor
      Sacramento, CA  95814

9.    Dr. Gregory Sokolov
      c/o Wilke, Fleury, Hoffelt, Gould & Birney, LLP
      400 Capitol Mall, 22nd Floor
      Sacramento, CA  95814

1

10. L. Michael Tompkins
c/o Wilke, Fleury, Hoffelt, Gould & Birney, LLP
400 Capitol Mall, 22nd Floor
Sacramento, CA  95814

11. Richard Hayward, Ph.D.
1296 Woodside Road
Redwood City, CA 94061

12. Emily A. Keram, M.D.
1160 N. Dutton Ave., Suite 255
Santa Rosa, CA 95401

13. Wendy Rene Garabedian, MD
Santa Clara Med Ctr Room 7C065
751 S. Bascon ave. Internal MED
San Jose, CA 95128

14. Donna Jean Kinser, MD
Dept. of Health Care Services
1500 Capitol Ave., MS 2303
Sacramento, CA 95814

15. Pouria Kashkouli, M.D.
4150 V St., Ste. 3400
Sacramento, CA 95817

16. Hazem Hashem, MD
220 Brighton Circle
Vacaville, CA 95687

17. Lori Jean Severance, LCSW
c/o Wilke, Fleury, Hoffelt, Gould & Birney, LLP
400 Capitol Mall, 22nd Floor
Sacramento, CA  95814

18. Sadhana Unarie, Mental Health Assistant III
Visions Unlimited
6631 Main Avenue
Orangevale, CA 95662

19. Cynthia Lopez
Visions Unlimited
6631 Main Avenue
Orangevale, CA 95662

2

20. Jill Bloom, RN
Visions Unlimited
6631 Main Avenue
Orangevale, CA 95662

21. *Jessica Nicole McNary, LVN*
*c/o Wilke, Fleury, Hoffelt, Gould & Birney, LLP*
*400 Capitol Mall, 22nd Floor*
*Sacramento, CA  95814*

22. *Kathryn Newbold Thomas, CMA*
*c/o Correctional Health Services*
*Sacramento County Sheriff's Department*
*711 G Street*
*Sacramento, CA 95814*

23. *Sheriff Scott Jones*
*c/o  Sacramento County Sheriff's Department*
*711 G Street*
*Sacramento, CA 95814*

24. *AnnMarie Boylan*
*c/o Correctional Health Services*
*Sacramento County Sheriff's Department*
*711 G Street*
*Sacramento, CA 95814*

25. *Vashti Hutchinson*
*Last known address: California Department of Corrections*

26. *Cindy Peterson, RN*
*c/o Correctional Health Services*
*Sacramento County Sheriff's Department*
*711 G Street*
*Sacramento, CA 95814*

27. Deputy Heather Emmons (Badge #1475)
c/o Sacramento County Sheriff's Department
711 G Street
Sacramento, CA 95814

28. Sergeant Donald E. Vagt (Badge #14)
c/o Sacramento County Sheriff's Department
711 G Street
Sacramento, CA 95814

3

29. Deputy Christopher Nelson (Badge #580)
    c/o Sacramento County Sheriff's Department
    711 G Street
    Sacramento, CA 95814

30. Deputy David Nofsinger (Badge #1495)
    c/o Sacramento County Sheriff's Department
    711 G Street
    Sacramento, CA 95814

31. Deputy Patrick Walker (Badge #979)
    c/o Sacramento County Sheriff's Department
    711 G Street
    Sacramento, CA 95814

32. Deputy Brian Moore (Badge #1007)
    c/o Sacramento County Sheriff's Department
    711 G Street
    Sacramento, CA 95814

33. Deputy Stephanie Jacoby (Badge #1391)
    c/o Sacramento County Sheriff's Department
    711 G Street
    Sacramento, CA 95814

34. Deputy Valerie Buehler (Badge #904)
    c/o Sacramento County Sheriff's Department
    711 G Street
    Sacramento, CA 95814

4

## EXHIBIT B: DEFENDANTS' WITNESS LIST

1.     Defendant Robert Hales, M.D. – Dr. Hales will discuss the contours of the JPS program, his review of the actions of Ms. Champeau and defendant Tompkins, the JPS policies and procedures regarding acquisition of outside medical records, and the reasons therefore, and his subjective state of mind regarding the events in question at the time they occurred.

2.     Defendant Gregory Sokolov, M.D. – Dr. Sokolov will discuss the contours of the JPS program, his review of the actions of Ms. Champeau and defendant Tompkins, the JPS policies and procedures regarding acquisition of outside medical records, and the reasons therefore, and his subjective state of mind regarding the events in question at the time they occurred.

3.     Defendant Paul Hendricks, R.N. – Mr. Hendricks will discuss the contours of the JPS program, his review of the actions of Ms. Champeau and defendant Tompkins, the JPS policies and procedures regarding acquisition of outside medical records, and the reasons therefore, and his subjective state of mind regarding the events in question at the time they occurred.

4.     Defendant L. Michael Tompkins, Ed.D.  -  Dr. Tompkins will discuss the contours of the JPS program, his review of the actions of Ms. Champeau and defendant Tompkins, the JPS policies and procedures regarding acquisition of outside medical records, and the reasons therefore, and his subjective state of mind regarding the events in question at the time they occurred.  Defendant Tompkins will also specifically discuss his interview with Mr. Singh, the materials that he reviewed prior to same, and both his subjective intent and thoughts regarding Mr. Singh's level of suicidality and need for immediate psychiatric care and/or workup at the time he was saw him.

5.     Autar Singh – Autar Singh is the mother of the decedent, and will testify concerning decedent's prior suicide attempts as well as, his prior interactions with the plaintiff family and herself.

6.     Nirmal Dhesi – Nirmal Desai is the sister of the decedent, and will testify concerning conversation she had with plaintiff Amarjit Singh following the decedent's death in which plaintiff related to her the contents of the telephone conversation she had had with decedent just prior to his suicide.  She will also testify concerning the reactions of plaintiffs Amarjit, Prabjit and Jasjit Singh to the decedent's death.  She will also testify concerning a conversation that she had with the decedent before his death as well as the circumstances surrounding decedent's taking up residence with her and

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

917502.1      -1-      2:09-CV-1439-JAM-JFM
EXHIBIT B – WITNESS LIST

1   her family in the winter of 2007-2008.  Ms. Dhesi will also testify concerning her conversation with

2   Amarjit Singh a few days prior to Mr. Singh's suicide concerning her potential divorce from the

3   decedent.  Last, Ms. Dhesi will testify concerning the actual source of payments for the expenses of

4   decedent's funeral and burial.

5        7.      Sukhmindar Dhesi – Ms. Dhesi is the cousin of the minor plaintiffs, and as the daughter

6   of decedent's sister, Nirmal Dhesi, the decedent's niece.  She will testify as to the circumstances

7   surrounding the decedent's taking up residence at the Dhesi household in late 2007.  She will also

8   testify concerning the circumstances surrounding Mr. Singh's suicide attempt of January 2008, as well

9   as the circumstances surrounding his later transport to hospital by the police department.  Last, she

10  will testify about the reactions and statements concerning the decedent made by plaintiffs Prabjit

11  Singh and Jasjit Singh following the decedent's death.

12       8.      Lori Severance , LCSW – Ms. Severance will testify concerning her interactions with

13  Mr. Singh, including her completion of a "Mental Status Examination" and "Triage Assessment" on

14  him on March 13, 2008.

15       9.      Jeffrey Metzner, M.D. – Dr. Metzner is disclosed expert on behalf of the defendants,

16  and will testify in accordance with the Rule 26 Disclosure previously submitted to this court, as well

17  as in accordance with the declaration submitted by him in support of the defendants' motions for

18  summary judgment.  In particular, Dr. Metzner will talk of the adequacy of the assessments done of

19  the decedent by Ms. Champeau and defendant Tompkins, as well as causation.  Dr. Metzner will also

20  give testimony on the adequacy of the JPS policies and practices on the acquisition of outside medical

21  information on inmates who are being seen by JPS clinicians, as well as the merits of plaintiffs'

22  contention regarding a purported "de facto" policy of not obtaining all "readily accessible" medical

23  records on JPS' clients.

24       10.     Sheriff's Deputy Melissa Telliano – Ms. Telliano will testify concerning her interview

25  of Donna Champeau following the events in question.

26       11.     Deputy Brian Moore – Deputy Moore will testify concerning the circumstances of Mr.

27  Singh's suicide, and his actions and interactions with Mr. Singh immediately prior thereto.

28       12.     Uma Zykofsky – Ms. Zykofsky is a County employee who will testify concerning what

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

917502.1                              -2-                        2:09-CV-1439-JAM-JFM
                          EXHIBIT B – WITNESS LIST

1    information is and was contained on the CATS system regarding Mr. Singh.

2        13.    Deputy Brian Nofsinger – Deputy Nofsinger was custody deputy on duty on Mr.

3 Singh's housing unit on the day of his suicide. He will testify concerning his interactions with Mr.

4 Singh and Mr. Tompkins on that date, as well as Mr. Singh's actions during the day.

5        14.    Sgt. Donald Vagt – Sgt. Vagt is an officer in the Sacramento County Main Jail, and

6 will authenticate the phone log showing that Mr. Singh made a phone call to his wife, plaintiff Amarjit

7 Singh, at approximately 2:35 p.m. on the afternoon of 3/14/08.

8        15.    Deputy Truong – Deputy Truong is a Sacramento County Sheriff who responded to the

9 Singh residence in September of 2007, and took pictures of the physical injuries inflicted by decedent

10 upon plaintiff Amarjit Singh and his mother, Autar Singh. Deputy Truong will authenticate those

11 photographs, and discuss the circumstances of the domestic dispute that brought him to their

12 residence.

13        16.    Deputy M. Ball – Deputy Ball is a Sacramento County Deputy, who will testify

14 concerning the circumstances surrounding her visit to the Singh household in September 2007, when

15 she responded to a second domestic violence call.

16        17.    Kelly Bunn – Deputy Bunn is a Sacramento County Deputy, who will testify

17 concerning the circumstances surrounding her visit to the Singh household on September ___, 2007,

18 when she responded to a domestic violence call. (Defendants anticipate using either Deputy Ball or

19 Deputy Bunn, not both, depending on their relative availability.)

20        18.    Laura Sender, LCSW – Ms. Sender is a clinical social worker at Sutter General

21 Hospital, who will testify concerning her interactions with, as well as statements made by decedent

22 Baljit Singh during his hospitalization for a drug and alcohol overdose in late January 2008.

23        19.    Kevin Maxwell, M.D. – Dr. Maxwell is the personal physician for JPS clinician Donna

24 Champeau, R.N. and will testify concerning her medical and emotional conditions both before and

25 after the events in question herein.

26        20.    David Arenson, M.D. – Dr. Arenson is an expert retained by defendants, and will

27 testify concerning the nature and extent of decedent's pancreatitis, the pain that he suffered as a result

28 thereof, and his projected life expectancy, had the events in question not occurred.

21.     Sadhana Unarie, MHA – Ms. Unarie is a mental health associate at the Sacramento County Outpatient Mental Treatment Center, Visions. She will testify concerning her discussions with Mr. Singh regarding whether or not he was taking psychotropic medications in 2008 and her discussions with him about joining substance abuse treatment programs as well as Visions' treatment plans following a visit on February 13, 2008, and the followup efforts she made with Mr. Singh as a result of same.  She may also testify concerning the telephone call that she received from Ms. Severance, regarding Mr. Singh was actively on any type of psychotropic medications, as well as discussions she had with that worker regarding further efforts that would be necessary to obtain any of Mr. Singh's underlying treatment records.

22.     Paula Valdez – Ms. Valdez is a worker for the Child Action Services of Sacramento County, and will testify concerning the decedent's and plaintiffs' receipt of childcare subsidies from Sacramento County both before and after the events in question.

23.     Donna Kinser, M.D. – Dr. Kinser is the emergency room physician at UC Davis Medical Center who attended Mr. Singh on the night of March 13, 2012 – she will testify concerning her interactions with Mr. Singh, the diagnosis she made of Mr. Singh, and her impressions and recommendations regarding Mr. Singh. She will also testify concerning the reports and instructions she made with regard to Mr. Singh, as well as her availability for contact, had anyone wished to do so over the following day

24.     Pouria Kashkouli, M.D. – Dr. Kashkouli was one of the attending physicians for decedent Baljit Singh during his UCDMC hospitalization of 3/5/08-3/10/08.  He will testify concerning his treatment, assessment and impressions regarding Mr. Singh, as well as the preparation and intent of both his discharge instructions and his discharge summaries, as well as his general availability to discuss these matters with outside persons during the time period spanning the events in question.

25.     Tom Williams, RN – Mr. Williams is a Correctional Health Services nurse and will testify concerning his treatment of and interactions with Mr. Singh on March 13, 2008 and March 14, 2008.

26.     Christopher Smith, MD – Dr. Smith is a Correctional Health Services physician and

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

917502.1                                    -4-                        2:09-CV-1439-JAM-JFM
EXHIBIT B – WITNESS LIST

1  will testify concerning his treatment of and interactions with Mr. Singh on 3/14/08.

2      27.    Deputy V. Buehler – Deputy Buehler will testify concerning his interactions with Mr.

3  Singh during and following the "Ace bandage" episode on 3/13/08.

4      28.    Deputy K. Gouveia – Deputy Gouveia will testify concerning his interactions with

5  decedent on the early morning hours of 3/14/08.

6      29.    Katherine Newbold, MA – Ms Newbold is a Correction Helath Services Medical

7  Assistant and will testify concerning the events surrounding decedent's visit to the CHS nursing

8  station for a dressing change at 19:25 on 3/14/08.

1                     **EXHIBIT C: PLAINTIFFS' EXHIBIT LIST**

2     1.  Deputy Emmons' Rope/Ligature Report (Plaintiffs' MSJ Exhibit 11)

3     2.  Rope/Ligature Photo (Plaintiffs' MSJ Exhibit 12)

4     3.  Deputy Nelson's Rope/Ligature Report (Plaintiffs' MSJ Exhibit 13)

5     4.  PF-5 Singh Movement History (Plaintiffs' MSJ Exhibit 14)

6     5.  Safety Cell/Segregation Cell Log Sheet, 3-14-08 (Plaintiffs' MSJ Exhibit 28)

7     6.  4 West Logbook, 3-14-08 for B Nights (Plaintiffs' MSJ Exhibit 30)

8     7.  Sacramento Sheriff's Department Operations Order 10/5, Suicide Prevention Program

9         (Plaintiffs' MSJ Exhibit 31)

10    8.  Singh's purported JPS file (Plaintiffs' MSJ Exhibit 42)

11    9.  Baljit Singh Death Report (Medical Review) - Dr. Peter Dietrich (Plaintiffs' MSJ

12         Exhibit 43)

13    10. Correctional Health Services Administrative Policy Number 1112-Medical Review of

14         In-Custody Deaths (Plaintiffs' MSJ Exhibit 44)

15    11. 2007 Suicide Attempts or Self-Harm Incidents Update 6-30-08 (Plaintiffs' MSJ

16         Exhibit 48)

17    12. Sacramento Sheriff's Department Operations Order 3/07, Medical Emergencies

18         (Plaintiffs' MSJ Exhibit 17)

19    13. Medical Record Treatment Sheet, 3-14-08 (Plaintiffs' MSJ Exhibit 29)

20    14. Medical and Psychiatric Records from Methodist Hospital, 7500 Hospital Drive,

21         Sacramento, CA 95823, for time period 09/07/98-02/06/08;

22    15. Medical and Psychiatric Records from Sutter Memorial/Sutter General Hospital,

23         2801 L Street, Sacramento, CA 95816, for time period 05/13/06 – 01/31/08

24    16. Medical Records from Midtown Medical Center, Victor Kyaw, MD., 3701 J Street,

25         #201, Sacramento, CA 95816 for time period 09/14/05 – 03/03/08

26    17. Psychiatric Treatment Records from Sacramento County Mail Jail, Jail Psychiatric

27         Services, 651 I Street, Sacramento, CA 95814, for time period 09/15/03 – 03/14/08

28    18. Plaintiffs' Sacramento County Sheriff's Department Med-Run form for 3-13-08.

19. Psychiatric Treatment Records from Sacramento County Mental Health Treatment Center, 2150 Stockton Blvd., Sacramento, CA 95817, for time period 12/09/05-01/28/08

20. Sacramento County Department of Health and Human Services Certificate of Death for Baljit Singh, dated 03/17/08 (Bates Stamp Number 1560)

21. Authorization to Release Medical Information forms and medical records for decedent from Victor A. Kyaw, MD, dated 10/20/06 – 10/22/06 (Bates Stamp Numbers 1728-1736)

22. Purchase Approval and Agreement with North Sacramento Funeral Home, dated 03/15/08, in the amount of $5,549.98 (Bates Stamp Number 1744)

23. (1) receipt for payment in the amount of $1,000.00 and (1) receipt for payment in the amount of $1001.00, payable to Gurdwara Dashmesh Darbar, dated 3/21/08 and 2/21/09 (Bates Stamp Numbers 1745-1746)

24. Various color photographs of Baljit Singh and his family

25. Copies of cloths painted by Baljit Singh for his family (Bates Stamp Numbers 1801-1812)

26. 4 West Logbook, 3-14-08 for B Days (Plaintiffs' MSJ Exhibit 51)

27. L. Michael Tompkins 3-14-08 Progress Notes (Plaintiffs' MSJ Exhibit 55)

28. April 07 Suicide Training Power Point (Plaintiffs' MSJ Exhibit 60)

29. August 07 Suicide Training Power Point (Plaintiffs' MSJ Exhibit 61)

30. Jail Psychiatric Services Telephone Referral and After Hours Referral/ Contact, 3-14-08, 1:45 (part of Deposition Exhibit 20) (Plaintiffs' MSJ Exhibit 65)

31. 7 East Logbook, 3-13-08 for B Days (Plaintiffs' MSJ Exhibit 67)

32. Sacramento Sheriff's Department Casualty Report # 08-0014383SD (Plaintiffs' MSJ Exhibit 68)

33. JPS Suicide Assessment-Baljit Singh, March 14, 2008 (Plaintiffs' MSJ Exhibit 69)

34. Correctional Health Services Administrative Policy Number 1412, Suicide Prevention 2M-Joint Policy (Deposition Exhibit 100) (Plaintiffs' MSJ Exhibit 70)

1    35. Sacramento Sheriff's Department Receiving-Screening Form-Baljit Singh, 3-5-08

2        (Plaintiffs' MSJ Exhibit 73)

3    36. Correctional Health Services, Request For Provider Services, 3-10-08 (Plaintiffs' MSJ

4        Exhibit 74)

5    37. Request For Psychiatric Services-March 10, 2008 by Baljit Singh (Plaintiffs' MSJ

6        Exhibit 75)

7    38. Request For Psychiatric Services-March 11, 2008 by Baljit Singh (Plaintiffs' MSJ

8        Exhibit 76)

9    39. UC Davis Discharge Instructions-March 14, 2008 (Plaintiffs' MSJ Exhibit 77)

10    40. Jail Psychiatric Service-Outpatient Progress record 3-14-08- Champeau

11        (Plaintiffs' MSJ Exhibit 78)

12    41. JPS Initial Screening Assessment 3-13-08-Lori Severence (Plaintiffs' MSJ Exhibit 83)

13    42. Mental Status Exam 3-14-08-Champeau (Plaintiffs' MSJ Exhibit 84)

14    43. CATS Printout Singh – printed after 3-14-08 (Plaintiffs' MSJ Exhibit 85)

15    44. Suicide Prevention, Sacramento County Main Jail, Jail Psychiatric Services, Powerpoint

16        Presentation (Plaintiffs' MSJ Exhibit 92)

17    45. JPS Policy #1049, Suicide Prevention Program (Plaintiffs' MSJ Exhibit 93)

18    46. JPS Self-Inflicted Injury Report, 1st Quarter 2008 (Plaintiffs' MSJ Exhibit 95)

19    47. National Commission on Correctional Health Care (NCCHC) Standards for Health

20        Services in Jail, 2008, Suicide Prevention Program (Plaintiffs' MSJ Exhibit 96)

21    48. Suicide Prevention in Jails and Prisons, by Jeffrey Metzner, M.D. and Lindsay M. Hayes

22        (Plaintiffs' MSJ Exhibit 101)

23    49. JPS Policy #101, JPS Program Description (Plaintiffs' MSJ Exhibit 102)

24    50. Champeau Board of Nursing Accusation, Case No. 2010-359 (Plaintiffs' MSJ Exhibit

25        105)

26    51. Champeau Board of Nursing Decision, Case No. 99-26 (Plaintiffs' MSJ Exhibit 106)

27    52. JPS Outpatient Progress Note-3/13/07 sic – Lori Severance (Plaintiffs' MSJ Exhibit

28        107)

1     53. Deposition Transcript of Amarjit Singh, dated February 10, 2011 (Plaintiffs' MSJ

2          Exhibit 108)

3     54. Singh Jail Telephone Call Log (Plaintiffs' MSJ Exhibit 109)

4     55. Letter dated March 9, 2000 from Jeffrey Metzner to Frank Loge, Dept. of Medical

5          Systems, County of Sacramento (Exhibit 3 to the Deposition of Jeffrey Metzner, dated

6          May 31, 2012)

7     56. Practice Guideline for the Assessment and Treatment of Patients with Suicidal

8          behaviors, published 11/2003 (Exhibit 4 to the Deposition of Jeffrey Metzner,

9          dated May 31, 2012)

10    57.  Evidence Chart/Summary of CATS evidence mental health treatment

11    58. Evidence Chart/Summary, Baljit Singh, March 2008 custody timeline

12    59. UC Davis Medical Records of Baljit Singh between March 5 and March 10, 2008

13    60. UC Davis Medical Records of Baljit Singh between March 13 and March 14, 2008

14    61. Visions Unlimited Psychiatric Treatment Records of Baljit Singh

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

**EXHIBIT D: DEFENDANTS' EXHIBITS – SCHEDULES AND SUMMARIES**

A.   Decedent Baljit Singh's JPS records

B.   Decedent Baljit Singh's records from UC Davis Medical Center, 3/5/08-3/10/08 and 3/13/08

C.   Report by Laura Sender, MSW, 1/25/08

D.   Letter, undated, Amarjit Singh

E.   Child Action Network Notices concerning benefits payable to plaintiffs as a result of decedent's disability, dated 2/22/08 and 4/14/08

F.   Decedent's records from Sacramento County Outpatient Mental Health Treatment Center, Visions Unlimited

G.   Medical records of Donna Champeau, R.N. from the UC Davis Medical Group – Grass Valley

H.   Sacramento County Sheriff's Department Incident Report, dated 9/6/07 (Detective Bunn)

I.   Incident Report, Sacramento County Sheriff's Office, 9/7/07 (Deputy Ball)

J.   Selected medical records of decedent from the Sacramento County Mental Health Treatment Center

K.   Photographs of Plaintiff Amarjit Singh, taken by the Sacramento County Sheriff's Office on 9/6/07

L.   Photographs of Autar Singh taken by the Sacramento County Sheriff's Office, 9/7/07

M.   Decedent Baljit Singh's medical records from the Sacramento County Correctional Health Services, 3/5/08-3/14/08

N.   Plaintiff Prabjit Singh's counseling records from Terra Nova Counseling

O.   JPS personnel file of Donna Champeau, R.N., from inception of employment through 6/30/08

P.   JPS personnel file of defendant L. Michael Tompkins, Ed.D., from inception of employment through 6/30/08

Q.   Restraining Orders, Amarjit Singh, against Baljit Singh, Sacramento Superior Court,

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

917504.1

-1-

2:09-CV-1439-JAM-JFM

EXHIBIT D – EXHIBIT LISTS

1 December 22, 2006;

2     R.    Request by plaintiff Amarjit Singh for TRO on May 10, 2007, free service

3     S.    TRO dated September 10, 2007

4     T.    Permanent Restraining Order, October 3, 2007

5     U.    Request for free service of restraining order upon decedent by plaintiff Amarjit Singh,

6 dated March 6, 2008

7     V.    School records Prabjit Singh Dhanda – Elk Grove Unified School District

8     W.    Handwritten notes on case from plaintiff expert Dr. Richard Hayward

9     X.    San Mateo County Suicide Prevention Assessment Form

10     Y.    Telephone Log, 4W, 3/14/08

11     Z.    Unit Logs, 4W, 3/1408

12     AA.    Deputy K. Gouveia statement in Sheriff's Department Continuation Report #08-

13 001468SD

14     BB.    Discharge Summaries FAXed to the Main Jail by UCDMC on 3/17/08.

15     CC.    Deputy V. Buehler Casualty Report #08-0014383SD, 3/14/08.

16     DD.    Deputy M. Telliano Report on her conversation with Donna Champeau, RN, in

17 Continuation Report #08-0014682SD, 3/14/08.

18     EE.    Deputy B. Moore, portion of Continuation Report on his investigation of circumstances

19 of decedent's suicide, #08-0014682SD, 3/14/08.

20     FF.    Sacramento County Sheriff Department Intent to Incarcerate Form, #2897.

21     GG.    Katherine Newbold Statement to Deputy Waterstradt, part of Continuation Report #08-

22 0014682SD, 3/14/08.

23     HH.    JPS Policy 1001 – "After Hours Psychiatric Evaluation"

24     II.    JPS Policy 1021 – "In-Patient Nursing Staff Responsibilities"

25     JJ.    JPS Policy 1022 – "Overview of Staff Responsibilities – Outpatient Department"

26     KK.    JPS Policy 1029 – "Outpatient Department Triage"

27     LL.    JPS Policy 1037 – "Outpatient Intake"

28     MM.    JPS Policy 1049 – "Suicide Prevention Program"

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

917504.1    -2-    2:09-CV-1439-JAM-JFM
EXHIBIT D – EXHIBIT LISTS

1      NN.   JPS Policy 103 – "Organizational Chart"

2      OO.   CATS Service and Provider Codes

3      PP.   Sacramento County Main Jail Unit Log, 7E, 3/13/08

4      QQ.   Coroner Report on Decedent, 9/11/08, with tox screen and vitriol glucose reports

5      RR.   Deposition Transcript of Amarjit Singh

6      SS.   Plaintiffs' Responses to Defendants' Special Interrogatories, Set One, Nos. 1, 2, 5, 9,

7   10 and 15

8      TT.   Photograph of decedents' prescriptions produced by Amarjit Singh at her deposition

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

917504.1

-3-

2:09-CV-1439-JAM-JFM

EXHIBIT D – EXHIBIT LISTS