1  **LAW OFFICE OF STEWART KATZ**
   Stewart Katz, SBN 127425
2  555 University Avenue, Suite 270
3  Sacramento, CA 95825
   Telephone: (916) 444-5678
4  Facsimile: (916) 444-3364
5  Attorneys for Plaintiffs

6  **LAW OFFICE OF JOSEPH C. GEORGE**
   Joseph C. George, Sr., SBN 119231
7  Joseph George, Jr., SBN 200999
8  601 University Ave, Suite 200
   Sacramento, CA 95825
9  Telephone: (916) 641-7300
   Facsimile: (916) 641-7303
10 Attorneys for Plaintiffs

**FILED**

SEP 0 3 2013

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
          DEPUTY CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Estate of BALJIT SINGH, deceased, by and through PRABJIT SINGH DHANDA, JASJIT KAUR DHANDA, SUKHJIT KAUR DHANDA and DAVANJIT SINGH DHANDA (minors through their mother and guardian ad litem Amarjit Singh) and AMARJIT SINGH as successors in interest; PRABJIT SINGH DHANDA, Individually; JASJIT KAUR DHANDA, Individually; SUKHJIT KAUR DHANDA, Individually; DAVANJIT SINGH DHANDA, Individually; and AMARJIT SINGH, Individually, <br><br> Plaintiffs, <br><br> vs. <br><br> UC Davis Department of Psychiatry Chair DR. ROBERT HALES; Clinical Director of Jail Psychiatric Services PAUL HENDRICKS; Medical Director of Jail Psychiatric Services DR. GREGORY SOKOLOV; L. MICHAEL TOMPKINS, <br><br> Defendants. | CASE NO. 2:09-CV-01439-JAM-JFM <br><br> **STIPULATION OF PARTIES REQUESTING COURT APPROVAL OF SETTLEMENT OF MINORS' CLAIMS AGAINST DEFENDANTS DR. ROBERT HALES, PAUL HENDRICKS, DR. GREGORY SOKOLOV AND L. MICHAEL TOMPKINS; [PROPOSED] ORDER** |

STIIPULATION REQUESTING APPROVAL OF MINORS' CLAIMS AGAINST
UC DAVIS DEFENDANTS; [PROPOSED] ORDER                                          1

PURSUANT TO LOCAL RULE 202, the parties to the above-referenced action by and through their undersigned attorneys hereby stipulate and respectfully request the Court to approve the settlement of the minors' claims as to defendants Dr. Robert Hales, Paul Hendricks, Dr. Gregory Sokolov, and L. Michael Tompkins in this matter for the reasons set forth below.

## BASIS FOR APPROVAL OF PROPOSED SETTLEMENT OR COMPROMISE OF MINORS' CLAIMS

The above-referenced case involves plaintiffs Prabjit Singh Dhanda, Jasjit Kaur Dhanda, Sukhjit Kaur Dhanda and Davanjit Singh Dhanda, who are the minor children of the decedent Baljit Singh. The minors' mother, Amarjit Singh, is a plaintiff and was appointed their guardian ad litem for this action.

This is a civil rights action brought under 42 U.S.C. section 1983 regarding the suicide of Baljit Singh at the Sacramento County Main Jail. The action, which at one time included supplemental state law claims, was brought against various defendants who have been consistently described as Sacramento County Defendants and JPS Defendants. Extensive discovery was conducted in this case. Lengthy dispositive motions were filed, argued and considered by the Court.

The Sacramento County Defendants were all successful in their summary judgment motions which eliminated all of the claims against them, including those pertaining to the suicide prevention policies.

The JPS Defendants remaining in the case, on plaintiffs' theories that their direct interaction or supervisory shortcomings, including ratification, caused Baljit Singh's death, are UC Davis Department of Psychiatry Chair Dr. Robert Hales, Clinical Director of Jail Psychiatric Services Paul Hendricks, Medical Director of Jail Psychiatric Services Dr. Gregory Sokolov, and Dr. L. Michael Tompkins, a psychologist formerly employed by JPS at the jail.

1  The JPS Defendants have adamantly denied any liability and dispute the damages. Notwithstanding those denials, a settlement was reached contingent upon this court's approval by which the JPS Defendants would pay (The settlement is being paid by the University of California Regents who were the employers of all of the individual JPS Defendants at the relevant time, as well as the employer of decedent Donna Champeau) a total of $375,000, the allocation of which is discussed below.

This motion seeks approval of settlement with the JPS Defendants as it applies to the minors in this matter.

1. **Minors' names:** Prabjit Singh Dhanda, Jasjit Kaur Dhanda, Sukhjit Kaur Dhanda, and Davanjit Singh Dhanda.

2. **Age/Sex of Minors:** Prabjit Singh Dhanda is a 16 year old male, DOB       1997; Jasjit Kaur Dhanda is a 15 year old female, DOB       1998; Sukhjit Kaur Dhanda is an 8 year old female, DOB       2005; Davanjit Singh Dhanda is a 7 year old male, DOB       2006.

3. **Causes of Action:** The causes of action to be settled are all based on 42 U.S.C. § 1983 survival action claims on behalf of the minors based on plaintiffs' allegations that the JPS Defendants were deliberately indifferent to decedent Singh's medical needs and that their constitutionally deficient supervision and ratification of the deliberately indifferent care of Singh resulted in his death by suicide.

4. **Factual Basis:** This case arises out of the suicide of Baljit Singh on March 14, 2008, at the Sacramento County Main Jail.

At the time of his death Singh was a post-arraignment, pretrial detainee. He was arrested on March 5, 2008, and taken to the jail. At the booking medical screening he was determined by a Sacramento County Jail nurse to be medically unfit for incarceration and sent to the U.C. Davis Medical Center because he was showing the effects of withdrawing from alcohol/DTs and chronic pancreatitis. At that same screening, it was noted that Singh was to be seen by Jail Psychiatric Services (JPS) for mental issues and his need for psychotropic medications.

Singh was at the U.C. Davis Medical Center between March 5th and March 10th. During that time he was given the psychotropic medications that he had previously been prescribed. At that time, he did not have an active prescription because his medications had been discontinued as a result of his continued drinking, which is contraindicated when on his medications.

Singh was first seen for a mental health assessment by a JPS worker, LCSW Lori Severance, on the morning of March 13, 2008. Severance did an appropriate assessment. As part of doing her assessment, she printed out a copy of the Sacramento County Mental Health Systems CATS information for Singh. The CATS printout showed the dates of his involuntary psychiatric hospitalizations which coincided with previous suicide attempts. At the time of her assessment she did not believe Singh was suicidal. However, she did note his history of multiple prior suicide attempts and in-patient, involuntary psychiatric hospitalizations. She also was aware that Singh was desperate to continue taking the psychotropic medications which he had resumed taking at the U.C. Davis Medical Center, albeit without a new prescription.

On the afternoon of March 13, 2008, Singh wrapped an elasticized bandage around his neck in a possible attempt to kill himself. Singh was alone in his cell at that time. By happenstance, another jail inmate who had been called out of his cell to attend a court hearing glanced through the window in Singh's cell door and saw what was happening. He spontaneously yelled out that Singh was trying to kill himself. A deputy promptly rushed into the cell and was able to remove the noose before Singh had done any permanent damage. However, there was "a knot on the victim's left side."

Singh was taken to the hospital by ambulance to be medically cleared. While at the hospital, he remained in the custody of the Sacramento Sheriff's Department and under guard. At the hospital no significant physical injury was found. He was returned to the jail with the expectation that he would be psychiatrically evaluated and appropriately treated.

After Singh was returned to the jail, he was seen by JPS psychiatric nurse, Donna Champeau, for a suicide risk assessment. Champeau is now deceased and, therefore, is not a

STIIPULATION REQUESTING APPROVAL OF MINORS' CLAIMS AGAINST
UC DAVIS DEFENDANTS; [PROPOSED] ORDER

4

party to this action. Plaintiffs argue that Champeau did a suicide risk assessment in name only. Ignoring the information in the file documenting Singh's troubled psychiatric history and Singh's inability or refusal to answer questions about his suicide attempt the previous day, she decided that Singh was a manipulative liar and cleared him for general population with no suicide precautions in place. Defendants and Defendants' experts asserted that Champeau's suicide assessment was both adequate and consistent with Severance's mental health assessment.

Shortly after Singh was placed in a general population cell, that housing unit's correctional officers received a phone call from the jail medical staff alerting them that Singh had attempted suicide the previous day and they believed he had not yet been cleared by JPS for general population. In response to that call, the deputies removed Singh from his cell and placed a phone call to JPS requesting an evaluation of a suicidal inmate. The deputies denied their independently being aware of any suicidal actions, words or tendencies by Baljit Singh at that time.

Defendant Tompkins was given the telephone referral regarding the requested evaluation of Singh. Tompkins reviewed the JPS file which included the CATS printout and both Severance's evaluation from the previous day and Champeau's suicide assessment from that morning, March 14, 2008. Plaintiffs contend that Tompkins formed the opinion that Champeau's assessment was wrong and incomplete and that while he was reviewing the file, Severance told him she thought Singh should be placed in the in-patient unit (suicide watch). Tompkins decided not to do a suicide risk assessment because Champeau had done one. Defendants deny that Tompkins formed any belief that Champeau's assessment was deficient and further contend that Tompkins was not, based on the information he had, obligated to do a formal suicide assessment, utilizing JPS' suicide assessment form, nor that he was required to see Singh, and further contend that his assessment of Mr. Singh was both correct and appropriate under the circumstances.

Tompkins went to see Singh and spoke with him for what may have been as little as two minutes, as the Plaintiffs believe, or closer to the five minutes that the defense

contends. Tompkins recognized that Singh suffered from a variety of mental illnesses. Singh again asked when he would be seen by a psychiatrist so his medications could be resumed to which Tompkins told him that wasn't going to happen before next week. Tompkins did not tell the correctional staff that Singh was at any heightened risk of suicide.

Plaintiffs believe that Tompkins mischaracterized his interaction with Singh when reporting that Singh "Did not meet 5150 criteria," thus suggesting that he had, in fact, done a suicide assessment of Singh. Defendants claim Tompkins appropriately reported his interaction with Singh.

Later that day, Singh jumped to his death from the upper tier.

Following the suicide, Sokolov and Hendricks took control of the file in anticipation of possible litigation. As a result of the death, by statute and policy there were several reviews of Singh's death, including a death review headed by the County Jail's Medical Director, Paul Dietrich, also deceased. Throughout the review process, Defendants Hales, Sokolov and Hendricks denied that either Champeau or Tompkins had done anything wrong. They ratified the actions of Champeau and Tompkins. Defendants deny the materiality of any discrepancies between Champeau and Severance's assessment. Plaintiffs assert that the discrepancy between Champeau's assessment and the CATS printout were significant. Plaintiffs also asserted that there were obvious gaps in information contained in the JPS file, which resulted from their de facto policy of doing assessments without accessing relevant, readily available medical information. Defendants denied that there was such a de facto policy/practice, and further deny that any relevant available medical information was ignored by the JPS clinicians who saw Mr. Singh.

Tompkins, one week before his deposition, threw out his notes regarding Singh that had expanded upon his Progress Note in the JPS file rather than produce them at his deposition.

Two court days before trial was scheduled to begin, defense counsel, plaintiffs and the court were notified that there were significant omissions from the JPS file that had been discovered and relied upon by the attorneys and experts throughout the course of the action.

The trial date was continued and considerable additional discovery was undertaken as a result, the cost of all of which was to be borne by the defendants.

5. **Extent of Injuries:** The minor plaintiffs' injuries in this action are emotional injuries resulting from the loss of the love and support of their father.

Prior to his incarceration, the decedent was subject to a restraining order barring him from interacting with his children and wife. He was disabled and unable to provide financial support to his family.

Defendants would have presented expert testimony regarding Singh's shortened life expectancy, notwithstanding the suicide.

6. **Compromise determination:** Plaintiffs were motivated to settle this case because of the desire for closure and the realization that it might, in fact, be difficult for a jury to find liability. The case was neither straight forward nor simple. (At summary judgment, the Court rejected plaintiffs' relatively simple theory that liability could be premised by a policy failure of not requiring that Singh be placed on suicide watch for a minimum of twenty-four hours.) Plaintiffs were concerned whether a jury would find the necessary causal connection between the provable, deficient actions of Defendants and the seemingly determined and volitional act of suicide by Baljit Singh. Also, Plaintiffs were concerned with the possibility of a low damage award based upon a jury's possible perception that the plaintiffs should not receive a significant amount of monetary damages based on their relationships with Baljit Singh and his questionable prospects of providing economic support.

Defendants' primary incentive to resolve this case related to both the fees and costs they would face if Plaintiffs prevailed at trial and those they were obligated to incur regardless of the trial result because of their defending the action and their obligations arising from the continuance of the trial. An additional concern was that plaintiffs could prevail at trial and could potentially receive a verdict amount impacted if the jury found that the problems regarding the physical JPS file and documentation were material and due to the wrongful acts of the defendants.

The proposed settlement was arrived at through negotiations which separately addressed the plaintiffs' damages and the attorney's fees and costs. The total amount of the proposed settlement is $375,000.00 allocated in the following manner:

- $100,000.00 in total be placed in blocked accounts for the benefit of Baljit Singh's four children, Prabjit Singh Dhanda, Jasjit Kaur Dhanda, Sukhjit Kaur Dhanda, and Davanjit Singh Dhanda, who are named plaintiffs, in a federally insured bank for their benefit. That money shall be divided into four separate, blocked accounts for each of the four children in the amount of $25,000.00 until he or she reaches eighteen years of age, unless the Court authorizes the withdrawal and expenditure of any portion of those funds.
- $ 25,000.00 to be paid to Amarjit Singh, Baljit Singh's widow.
- $250,000.00 collectively to be paid to the Law Office of Stewart Katz and the Law Office of Joseph C. George for statutory fees and costs. Further, this is to include the attorney fees attributable to the continuance of the April 8, 2013, trial date (defendants have agreed to pay the "hard costs" for deposition reporting, videotaping, plane fares, and Dr. Hayward's expert fees associated with that continuance and the reopened discovery up through and including the date of settlement, June 14, 2013.)

7. **Attorney's Fees and Costs.** Plaintiffs' attorney, Stewart Katz, was hired in 2008 and the Law Office of Joseph George associated into the case with Katz in August, 2009. The agreement provided for the attorneys to receive all statutory fees and costs either awarded by the court or as agreed upon by the parties, or, in the alternative, a percentage of the award—the percentage increasing over time, starting at 25% and eventually escalating up to 50% which was the amount from late 2011 through the present time.

The amount of fees under this settlement is far less than plaintiffs' counsel would have been entitled to pursuant to a fee award and is significantly less than the amount due from a settlement without any provision for attorney fees.

In total, plaintiffs' counsel's office spent at least 1313 hours prosecuting this civil rights action as to the JPS Defendants (This excludes the time spent opposing the County Defendants MSJ, as well as issues not related to the JPS defendants, such as, inadequate staffing.) Based on hourly rates of $400.00 (785 hours) for Stewart Katz; $175.00 (242 hours) for Guy Danilowitz; $400.00 (120.2 hours) for Joseph George, Sr.; and $280.00 (165.9 hours) for Joseph George Jr., the attorney's fees totaled $450,882.00. Attached as Exhibit 1 is a summary and further breakdown of the attorney's fees.

It should be noted that $58,564.00 of the fees are attributable to matters associated with the continuation of the April 8, 2013, trial date.

Attached as Exhibit 2 are the costs associated with the case. Those costs total $95,497.67.

Finally, plaintiffs' counsel notes that the amount of the settlement for fees and costs is appropriate as it has been approved by the guardian ad litem for the minors, and given the risk taken by plaintiffs' counsel to prosecute this matter. Counsel took the matters on a contingency basis and advanced all fees and costs and thus went unpaid during the prosecution of this action.

This stipulation may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument. Each of the parties below may execute this agreement through separate signature pages, with, as necessary appropriate verifications of their signatures, which will then be incorporated into one final document, which will then constitute the parties' final stipulation. When all signatures have been assembled into one final document, copies of same will be provided to the parties, by and through their respective counsel.

///
///
///
///
///

| | | |
|---|---|---|
| Dated: 8-29, 2013 | | LAW OFFICE OF STEWART KATZ |
| | | *(signature)* |
| | | STEWART KATZ |
| | | Attorney for Plaintiffs |
| Dated: 08\29, 2013 | | LAW OFFICE OF JOSEPH C. GEORGE |
| | | *(signature)* |
| | | JOSEPH C. GEORGE, SR. |
| | | Attorney for Plaintiffs |
| Dated: _____, 2013 | | WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP |
| | | ROBERT F. TYLER, JR. |
| | | Attorneys for Defendants, DR. ROBERT HALES, PAUL HENDRICKS; DR. GREGORY SOKOLOV; L. MICHAEL TOMPKINS |
| Dated: 8/30/13, 2013 | | *(signature)* |
| | | PRABJIT SINGH DHANDA, JASJIT KAUR DHANDA, SUKHJIT KAUR DHANDA, and DAVANJIT SINGH DHANDA, minors through their Guardian Ad Litem, AMARJIT SINGH, and as successors in interest of the Estate of Baljit Singh |
| Dated: 8/30/13, 2013 | | *(signature)* |
| | | AMARJIT SINGH, Individually and as successor in interest of the Estate of Baljit Singh |

| | | |
|---|---|---|
| 1 | Dated: _____, 2013 | LAW OFFICE OF STEWART KATZ |
| 2 | | |
| 3 | | _____ |
| 4 | | STEWART KATZ<br>Attorney for Plaintiffs |
| 5 | | |
| 6 | Dated: _____, 2013 | LAW OFFICE OF JOSEPH C. GEORGE |
| 7 | | |
| 8 | | _____<br>JOSEPH C. GEORGE, SR. |
| 9 | | Attorney for Plaintiffs |
| 10 | | |
| 11 | Dated: August 29, 2013 | WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP |
| 12 | | |
| 13 | | [signature]<br>ROBERT F. TYLER, JR. |
| 14 | | Attorneys for Defendants, |
| 15 | | DR. ROBERT HALES, PAUL HENDRICKS;<br>DR. GREGORY SOKOLOV; L. MICHAEL |
| 16 | | TOMPKINS |
| 17 | | |
| 18 | Dated: _____, 2013 | _____ |
| 19 | | PRABJIT SINGH DHANDA, JASJIT KAUR<br>DHANDA, SUKHJIT KAUR DHANDA, and |
| 20 | | DAVANJIT SINGH DHANDA, minors |
| 21 | | through their Guardian Ad Litem, AMARJIT<br>SINGH, and as successors in interest of the |
| 22 | | Estate of Baljit Singh |
| 23 | | |
| 24 | Dated: _____, 2013 | _____ |
| 25 | | AMARJIT SINGH, Individually and as<br>successor in interest of the Estate of Baljit |
| 26 | | Singh |
| 27 | | |
| 28 | | |

STIIPULATION REQUESTING APPROVAL OF MINORS' CLAIMS AGAINST
UC DAVIS DEFENDANTS; [PROPOSED] ORDER                                                                                        10

1
2  **IT IS SO ORDERED:**
3
4
5  Dated: August 30, 2013                    _____
6                                            United States District Judge
7
8
...
28

STIIPULATION REQUESTING APPROVAL OF MINORS' CLAIMS AGAINST
UC DAVIS DEFENDANTS; [PROPOSED] ORDER                              11

# EXHIBIT 1

Estate of Baljit Singh, et al. v. County of Sacramento, et al.
Case No. 2:09-CV-01439-JAM-JFM
Hours Summary and Breakdown

| Attorney | Total Hours for JPS Defs (*1) | JPS Only (*2) | JPS Substantial (*3) | County Defs Hours (*4) | Total # Hours Spent on Case |
|---|---|---|---|---|---|
| Stewart Katz | 785.0<br>$400.00<br>$314,000.00 | 388.2 @ $400/hr = $155,280.00<br>(Continuance Related: 102.9 @ $400/hr = $41,160.00) | 396.8 | 185 | 970 |
| Guy Danilowitz | 242.0<br>$175.00<br>$42,350.00 | 45.3 @ $175/hr = $7,927.50<br>(Continuance Related: 0 @ $175/hr = $0.00) | 196.7 | 35.6 | 277.6 |
| Joseph C. George, Ph.D. | 120.2<br>$400.00<br>$48,080.00 | 41.6 @ $400/hr = $16,640.00<br>(Continuance Related: 20.9 @ $400/hr = $8,360.00) | 78.6 | 0 | 120.2 |
| Joseph C. George, Jr. | 165.9<br>$280.00<br>$46,452.00 | 143.9 @ 280/hr = $40,292.00<br>(Continuance Related: 32.3 @ 280/hr = $9,044.00) | 22.0 | 1 | 166.9 |
| | (JPS Total: $450,882.00) | (Continuance Related Total: $58,564.00) | | | |

* 1: This is the total of the hours which are JPS only and those substantially related to JPS defendants. This figure includes the totals for the next two columns. The contemporaneously kept time records did not allocate the activities between these categories and this represents a best effort in that regard.

* 2: This category represents a good faith estimate of activities which exclusively or overwhelmingly related to the prosecution of the action against the JPS defendants. This figure encompasses all of the post summary judgment activities and trial preparation activities. It also includes the time spent on the JPS MSJ, the litigated discovery dispute(s) regarding peer-review discovery and discovery concerning the mental heath evaluations. The post-continuance time and dollars are listed underneath and included within each attorney's hours for this category. The contemperanously kept time records did not allocate the activities between these categories and this represents a best effort in that regard.

* 3: This category represents a good faith estimate of activities which while pertaining to the JPS defendants also were undertaken in connection with the case against the County defendants. This included but is not limited to the suicide prevention policy related discovery and research, damages, Plaintiffs' separate statement of facts, Singh's March 2008 incarceration, and Baljit Singh's extensive medical and psychiatric history, and the post-suicide reviews. The contemperanously kept time records did not allocate the activities between these categories and this represents a best effort in that regard.

* 4: This category represents a good faith estimate of activities which exclusively or overwhelmingly related to the prosecution of the claims against the County defendants. This includes the response to the County's MSJ motion and their SUMF, and discovery and research regarding the issues relating to the question of understaffing. The contemperanously kept time records did not allocate the activities between these categories and this represents a best efford in that regard.

1

Estate of Baljit Singh, et al. v. County of Sacramento, et al.
Case No. 2:09-CV-01439-JAM-JFM
Hours Summary and Breakdown

The agreed upon fees are 30.32% of the settlement after both the settlement amount and the amount of the attorneys' fees are adjusted for the sum attributable to the continuance:

Settlement Amount: $375,000.00
(less total continuance) -$58,564.00
Total: $316,436.00

Attorneys' Fees &
Costs Awarded: $250,000.00
(less costs): -$95,497.67
(less total continuance) -$58,564.00
Total: $95,938.33

2

# EXHIBIT 2

## Estate of Baljit Singh, et al. v. County of Sacramento, et al.
Case No. 2:09-CV-01439-JAM-JFM
Plaintiffs' Costs

|  |  | **Amount** |
|---|---|---:|
| **Filing Fees:** |  | $350.00 |
| **Service of Subpoenas & Non-Expert Witness Fees:** |  | $1,677.60 |
| **Investigative Fees:** |  | $117.50 |
| **Records & Copy Services:** |  | $6,378.08 |
| **Depositions and Court Transcripts:** | Transcript: Amarjit Singh | 447.95 |
|  | Transcripts: Prabjit & Jasjit Dhanda | 550.00 |
|  | Transcript: Nirmal Singh | 342.50 |
|  | Transcript: Sukhmindar Dhesi | 291.30 |
|  | Transcripts: Patrick Walker & Donald Vagt | 822.80 |
|  | Transcript: Gregory Sokolov, MD, Volume I | 1,056.70 |
|  | Transcripts: Brian Moore & Kathryn Newbold Thomas | 616.30 |
|  | Transcript: Jessica McNary | 263.50 |
|  | Transcripts: Shane Waterstradt & Melissa Telliano | 341.90 |
|  | Transcript: Gregory Sokolov, MD, Volume II | 482.40 |
|  | Transcript: Pouria Kashkouli, MD | 137.05 |
|  | Transcript: Donna J. Kinser, MD | 203.46 |
|  | Transcript: L. Michael Tompkins, Ed.D. | 412.00 |
|  | Videographer: L. Michael Tompkins, Ed.D. | 225.00 |
|  | Transcript: Robert Hales | 859.80 |
|  | Videographer: Robert Hales | 538.75 |
|  | Transcript: Lori Severance | 557.00 |
|  | Videographer: Lori Severance | 362.50 |
|  | Transcript: Paul Hendricks, RN | 740.20 |
|  | Videographer: Paul Hendricks, RN | 467.00 |
|  | Transcript: Cynthia Lopez | 390.75 |
|  | Transcripts: David Nofsinger & Scott Jones | 850.30 |
|  | Transcript: Sandy Unarie | 309.05 |

Page 1

## Estate of Baljit Singh, et al. v. County of Sacramento, et al.
Case No. 2:09-CV-01439-JAM-JFM
Plaintiffs' Costs

|  |  | **Amount** |
|---|---|---:|
| **Depositions & Court Transcripts (Cont'd):** | Transcripts: Peter Dietrich, MD; Wanda Battles, Uma Zykofsky | 1,011.65 |
|  | Transcript: Autar Singh | 97.50 |
|  | Transcript: Warren Cook | 432.20 |
|  | Transcript: Jeffery Metzner, MD | 723.95 |
|  | Expert Deposition Testimony Fees: Jeffrey Metzner, MD | 1,750.00 |
|  | Transcript: Lindsay Hayes-Volume 1 | 1,041.00 |
|  | Expert Deposition Testimony Fees: Lindsay Hayes | 2,100.00 |
|  | Expert Deposition Testimony Fees: Lindsay Hayes | 350.00 |
|  | Transcript: Richard Hayward, Ph.D. | 853.95 |
|  | Transcript: Emily Keram, MD | 539.20 |
|  | Transcript: Lindsay Hayes-Volume 2 | 665.69 |
|  | Transcript from Court Hearing on 10/3/12 | 38.70 |
|  | Transcript from Court Hearing on 04/8/13 | 748.00 |
|  | **SUBTOTAL:** | **$21,620.05** |
| **Expert Witness Fees:** | Richard Hayward | 32,994.00 |
|  | Warren Cook | 3,000.00 |
|  | Emily Keram, MD | 23,154.42 |
|  | David Freeto | 2,250.00 |
|  | **SUBTOTAL:** | **$61,398.42** |
| **Travel:** |  | **$3,001.94** |
| **Federal Express:** |  | **$487.11** |
| **Miscellaneous:** |  | **$466.97** |
|  | **GRAND TOTAL:** | **$95,497.67** |

Page 2